STATE ex rel. KENNEDY et al., Relators, v. MARTIN, Respondent.

[No. 1614.]

[Submitted October 15, 1900.  Decided October 22, 1900.]

*Elections—Party Conventions— Contesting Candidates—Right to place under Party Designation on Official Ballot.*

1. It is the policy of the election law that only one ticket shall appear upon the ballot under a particular party designation.
2. A political convention is a law unto itself and must be allowed to judge of the qualifications of its own members; but this authority, settled by rule or usage within the party, may not presume to disregard legislative enactments and take away rights which have already become fixed.
3. Where candidates for county offices have been duly nominated by a regularly called and organized county convention of a political party, and the proper certificate of nomination filed, the right to have their names printed on the official ballot, in the proper column, under the appropriate party designation, to the exclusion of any others under that designation, becomes fixed, and is not affected by the subsequent misconduct of the properly authorized delegates constituting such convention, in betraying their party and departing from its principles, nor by a resolution adopted by a state convention authorizing loyal members of the party to take charge of its affairs in the county and to nominate another county ticket; such resolution being ineffectual, except to change the administrative agencies of the party.
4. *Quaere*: Whether the legislature has power, under the Constitution, to enact provisions under which the courts would be required to recognize and enforce the determination of the party judicatories.

ORIGINAL application by the state of Montana, on the relation of J. M. Kennedy and others, against Martin Martin, as county clerk and recorder of Deer Lodge county, Montana, for a writ of mandate to compel him to file relators' certificate of nomination. Dismissed.

STATEMENT OF THE CASE.

Application for writ of mandate to compel Martin Martin, as clerk of Deer Lodge county, to file the certificate of nomination of the relators for the various county offices in Deer Lodge county, and to print their names upon the official ballot in the column headed "Democratic."

The facts necessary to be considered in this controversy, in connection with the history and action of the mass meeting or convention held in Deer Lodge county on September 18, 1900, and the subsequent action in the matter by the state convention held in Helena on the 19th, have already been stated, in part, in the case of *State ex rel. Scharnikow* v. *Hogan*, *ante* p. 383, 62 Pac. 493. They will not be restated. Other facts necessary to be considered here are the following: The Deer Lodge county mass meeting of the 18th, before its adjournment, by resolution authorized J. M. Simpson, its chairman, to appoint a central committee to represent the Democratic party of Deer Lodge county, and to manage its affairs. The state convention, before its final adjournment, formally recognized the Kennedy delegates chosen by the mass meeting as the "representatives of the Democratic party in the county of Deer Lodge," by the adoption of the following resolution:

"Be it resolved by the Democratic party in convention assembled, and by this convention, that the delegates of Deer Lodge county now holding seats in this convention be, and they are, recognized as the regular Democratic delegation of the Democratic party of the state of Montana from the county of Deer Lodge, in this state, and that they are hereby authorized, empowered, and directed to take charge and control of the affairs of said political party in the county of Deer Lodge, and to return to said county of Deer Lodge, and there, by their nominations and conventions, and otherwise, to carry out the principles of Democracy as expressed in the platform adopted by this convention, and to call county conventions and make nominations of county officers and such other officers as

they may be entitled to nominate by law for the election to occur in November, 1900."

In pursuance of this resolution, and under the authority given him by the county mass meeting, Mr. Simpson, aided by H. J. Toomey, the state committeeman appointed for Deer Lodge county by the state convention, appointed this committee, which met on September 24th, and organized by electing T. O'Leary and W. M. Goodman, respectively, its chairman and secretary. On the same day, by published notice, the committee, through its chairman and secretary, called a convention of the Democratic party, of Deer Lodge county to assemble in Deer Lodge on October 2d. It was directed in the call that delegates be selected by caucuses held in the various precincts on September 29th, according to the apportionment made in the call. On October 2d the convention assembled. Representatives were present from all precincts in the county except one. A full ticket for the county offices and for members of the legislative assembly was nominated, the names of all the relators being placed thereon. A certificate of nomination containing the information required by law to be contained therein, and signed by the chairman and secretary of the convention, was on October 5, 1900, and within the time provided by law, tendered to the defendant, with request that he file the same, and print the ticket named therein upon the official ballot to be used at the November election, under the designation "Democratic." This the defendant refused to do, for the reason that he had already filed, and intended to print upon the ballot under that designation, the nominations made by the Democratic county convention had at Deer Lodge on September 17th.

It is alleged by relators that the members of the Toole faction of the convention of September 17th, and the candidates then nominated, have gone over in a body to the Independent Democratic party, and that for this reason the ticket nominated by that convention should not be printed under the party designation. The proof tends to show that some of the participants in that convention, and some of the candidates nom-

inated by it, took part in the independent movement subsequent to the adjournment of the state convention of September 19th. ·Under these circumstances, it is asserted that it is the duty of the defendant to file the certificate containing the names of relators, and to print them upon the ballot under the designation ''Democratic.''

*Mr. N. W. McConnell, Mr. J. B. Clayberg,* and *Mr. T. O'Leary,* for Relators.

*Mr. T. J. Walsh,* for Respondent.

**MR. CHIEF JUSTICE BRANTLY,** after stating the case, delivered the opinion of the Court.

The question presented in this case is: What is the legal effect of the action of the state convention, whereby it gave authority to the Kennedy delegates to take charge of and control the affairs of the party in Deer Lodge county, to call a convention, and to nominate candidates for such offices as it was within the powers of that convention to make, under the regular party designation? Is this conclusive upon the rights of the candidates named by the convention of October 2d to have their names appear upon the printed ballot under the the party designation, to the exclusion of those nominated by the convention of September 17th?

The inevitable result of a decision sustaining the right of the former to appear upon the ballot under the party name would be a denial of this right to the latter; for it is the policy of the statute that only one ticket shall appear upon the ballot under a particular party designation. This is apparent from a careful reading of all the provisions pertaining to the making of nominations, the preparation of the ballot, and the methods provided by which an elector may vote. Particular reference is made to the provisions of Sections 1311, 1354 and 1361, (Political Code). The first of these sections prescribes what the certificate shall contain. Among other things it must contain a designation of the party or principle which the ticket

represents. This requirement is evidently designed to guide the proper officer in printing the ballot, so that he may group the candidates and distinguish them by this designation, in conformity with the directions contained in Section 1354, viz: "The list of candidates of the several parties shall be placed in separate columns on the ballot, in such order as the authorities charged with the printing of the ballots shall decide." Then follows the form of the ballot, with the tickets arranged in parallel perpendicular columns, each designated by the word "Republican," "Democratic," etc., with a circle at the head of each. A requirement is added that the ballot shall follow this form as to all candidates to be voted for at the election. Under the latter part of this section, and under Section 1361, the elector may vote his entire party ticket by placing a cross in the circle at the head of the column, under his party designation. If he does not desire to vote a "straight" ticket, he must place the cross opposite the name of each candidate of his choice. If, while reading all these provisions together, we keep in mind the purpose of the Australian ballot system, as stated in *State ex rel. Scharnikow* v. *Hogan, ante* p. 383, and also the fact that the ballot was thus arranged with a view to aid in its accomplishment by enabling the elector—the illiterate as well as the literate—readily to give an affirmative expression of his choice, free from the confusion and embarrassment so often incident to elections under the old system, by reason of the great variety of ballots of like name and emblem hawked about the polling places to defraud and deceive the unwary or illiterate voter, all doubt on this point disappears. If two tickets may appear upon the ballot under the same designation, then any number may be printed thereon, thus adding greatly to the embarrassment and discomfiture of the ordinary voter. Again, for illustration, if there be only one state ticket under the party name, but two or more county tickets, only one of these can be printed in the same column with the state ticket. Thus the county clerk will be put in a position where he cannot obey the statute, and the voter who wishes to vote a "straight" ticket cannot do so, unless he also belongs to the faction of the party

which favors the county ticket printed in the column with the state ticket. If neither is printed in that column, then the law is violated, and the right of voting a "straight" ticket cannot be exercised at all. Evidently the legislature, in enacting the statute, did not contemplate the condition of things presented in this case. The case of *State ex rel. Gillis* v. *Johnson*, 18 Mont. 556, 46 Pac. 440, cited by counsel, does not give us any aid. In that case two factions of the Republican party had filed separate county tickets under different designations. This Court held that under such circumstances, as no confusion would result from the presence of both upon the ballot, it would not interfere, but would leave the contention for the electors to decide.

Reverting to the question presented in this case, let us briefly examine the conditions out of which this controversy arose. The undisputed facts are that the convention of September 17th was properly called, and that it assembled and organized under the regular party authority; that the business before it was properly and regularly done; and that all the delegates took part in its proceedings until it finally adjourned. The candidates who were nominated by it sought their places upon the ticket with the knowledge that, if they secured these places, their names would be printed upon the ballot in the appropriate column with the rest of the party ticket. After their names were thus put upon the ticket, and the proper certificate was filed, the right to have their names appear upon the ballot became fixed; for there is no provision of the ballot law by which their places can be made vacant for the substitution of other names, except by death or resignation (Political Code, Sections 1319, 1320), or by conviction of a felony, judicially declared insanity, or removal from the state or county. The happening of either of these latter contingencies would necessarily create a vacancy, for each disqualifies an elector from holding office. (Constitution, Sections 8, 11, Art. IX; Political Code, Section 1181). It follows, therefore, that the names of such candidates must be printed in the proper column, to the exclusion of any others under that desig-

nation. No subsequent behavior of the properly authorized delegates constituting that convention, no matter how flagrantly they may have betrayed their party, or how far they may have departed from its established usages and principles, can be held to have vitiated the nominations regularly made while they were still within the party lines and acting as its representatives. True, the state convention at Helena recognized the delegates of the mass meeting of the 18th as the proper representatives from Deer Lodge county. But why? Because, as appears from the resolution passed at the time the Kennedy delegates were seated (see statement in *State ex rel. Scharnikow* v. *Hogan, supra*), 60 of the 63 Toole delegates "had withdrawn from the convention, and had refused to be further bound by the rules and regulations of the Democratic party." This resolution did not undertake to decide upon the regularity of the convention of the 17th, or to deny party recognition to the candidates then nominated. The subsequent resolution of that convention is more explicit, and its purpose was to empower the Kennedy delegates to take charge of the affairs of the party and to nominate a ticket. The action of the convention in seating the Kennedy delegates we would not presume to question. A political convention is a law unto itself, and must be allowed to judge of the qualifications of its own members. Organization and discipline are necessary to party existence. There must be some authority to which the subordinate or local divisions may appeal for settlements of disputes as to who shall represent the party and control its affairs. But in the settlement of these controversies this authority established by rule or usage within the party may not presume to disregard legislative enactments, with the enforcement of which the courts alone have to do, and take away rights which have already become fixed. The dispute which we are told was adjudicated by the state convention arose after the regular party authorities in Deer Lodge county had nominated a ticket. The power of the party for the purpose of making nominations had been exhausted. However desirable it was after the occurrances of the 19th and 20th, and the

subsequent behavior of the Toole faction and some of the candidates, that another list of candidates should be substituted for the one already made up, it was not possible for this to be done, and the resolutions of the state convention were ineffectual to grant authority for this purpose. They were effectual, however, to change the administrative agencies of the party in Deer Lodge county; and for the present campaign and thereafter, until the electors in the county again work a change, in the exercise of their powers under the party usages, its future control belongs exclusively to the organization effected under them. To this extent only can the action of the state convention be regarded as effectual for any purpose, under the circumstances of this case. To hold otherwise would put the convention above the law, and convert the Court into an instrumentality through, which, regardless of the law, penalties could be inflicted upon recalcitrant party members and disloyal candidates, to enforce party discipline. If the party desires to administer punishment upon its own members, it must do so at the polls, and it may do so effectively, so far as concerns the objectionable candidates. Under the provisions of the law, any voter may make out a full ticket after he enters the voting booth on election day, by pasting or writing upon the ballot, at the proper places, in the party column, the names of other candidates, and indicating his choice of these by a cross placed opposite them. If he does not choose to follow this course, he still has the privilege of voting the opposition ticket.

It is probably within the power of the legislature to so amend our election law that tickets nominated by rival factions in the same party may be given places upon the ballot. It is perhaps also worthy of consideration whether the legislature has power, under the Constitution, to enact provisions under which the courts would be required to recognize and enforce the determinations of the party judicatories, as it seems has been done in New York, Kentucky, South Carolina, and other states. (*In re Fairchild*, 151 N. Y. 359, 45 N. E. 943; *Cain v. Page* (Ky.) 42 S. W. 336; *Ex parte Sanders*, 53 S. C. 478,

31 S. E. 290). But, until changes are made in the law, we must enforce it as it stands, according to its manifest spirit and intent.

The alternative writ heretofore issued herein is vacated, and the proceeding dismissed, at the costs of the relators. Judgment may be entered accordingly.

*Dismissed.*

MR. JUSTICE WORD being a candidate upon the Independent Democratic ticket, did not sit at the hearing of this cause, and takes no part in its decision.