STATE ex rel. HATCH et al., Plaintiffs, *v.* SMART,
Defendant.

[No. 1610.]

[Submitted October 12, 1900.   Decided October 22, 1900.]

*Elections—Rival Factions within a Party—County Conventions — Regularity — Nominating Candidates — Rights of Candidates—Powers of State Conventions.*

24  413
24  444
24  413,
e27  193
27  194
27  196
24  413
31  236

1.  Under the Statutes of Montana there can be upon the official ballot but one nominee of a party for each office to be filled.
2.  Duly elected delegates to a party county convention have no greater authority than has been conferred upon them by the electors at the primaries where they were elected.
3.  A county convention of a political party, called by the county central committee to select delegates to a state convention, and for no other purpose, cannot depose the chairman of such committee, and supersede him by a chairman of its own selection, where the custom of such party was to select such chairman at a convention called to nominate county officers. Hence a convention for nominating candidates for office, called by such central committee through its duly elected chairman, though he had been deposed at such convention, was the authorized convention of such party.
4.  In a political party convention, the will of the majority of the delegates duly elected and entitled to seats is the will of such convention, irrespective of the mere manner in which the will of the majority may have been expressed.
5.  Where, in a political convention, the presiding officer directs that the temporary chairman be selected by ballot, and in his temporary absence from the platform a delegate addresses the convention, and requests all in favor of a certain candidate for the temporary chairmanship to rise, and a majority of the the convention does so, such candidate is the duly elected chairman of the convention; and its proceedings will be the acts of the convention, though the minority in the same hall proceed with the election by ballot, select a temporary chairman, and proceed independently of the majority.
6.  A legally eligible candidate is entitled to have his name appear on the official ballot in the column of every political party which has regularly nominated him.
7.  The state convention of a political party, within the scope of its powers, is the paramount and final judicatory of such party: yet its powers are limited; it cannot set aside nominations of a county convention which was held under a call by the regularly constituted authority of a party.

ORIGINAL application for *mandamus* by the state, on the relation of L. D. Hatch and others, against Howard D. Smart, as county clerk and recorder of Ravalli county, to compel the printing of their names on the official ballot in the Democratic column.  Granted.

*Mr. H. L. Myers* and *Mr. T. J. Walsh,* for Relators.

*Mr. N. W. McConnell, Mr. J. B. Clayberg,* and *Mr. T. O'Leary,* for Defendant.

**MR. JUSTICE PIGOTT** delivered the opinion of the Court.

*Mandamus.*  By this proceeding the plaintiffs seek a peremptory writ commanding the clerk of the county of Ravalli to cause to be printed on the official ballot, in the column headed "Democratic," and under the names of the nominees of that party for state offices, the names of the plaintiffs and two other persons, as the nominees of the Democratic party

for the several offices to be filled in the county of Ravalli at the ensuing general election on the 6th day of November. Asserting that they and the two other persons are the duly nominated candidates of the Democratic party, the plaintiffs allege that the clerk wrongly refuses to cause their names to be printed upon the official ballot as the candidates of the Democratic party. To the petition and alternative writ, answer was made, and upon the filing of a reply the issues were joined. A hearing was had, at which evidence was taken. There is no controversy concerning any material issue of fact raised by the pleadings.

The cause may be stated thus: Prior to the general election held in 1898, the Democratic party of the county of Ravalli, in convention assembled, appointed a county central committee, consisting of one committeeman from each precinct in the county, and empowered the committee to call subsequent conventions of the party. The convention chose the chairman, following the usage of the party in that county, under which nominating conventions had elected the chairman. Subsequently the office of chairman became vacant, by reason of the removal from the state of the man elected, and the committee in May, 1900, selected one McCullough as chairman. During the session of the committee at which McCullough was selected chairman, a convention of the Democratic party was called for the 18th day of June, 1900, for the purpose of electing delegates to the state convention to be held in Butte on the 20th day of June, 1900, which latter convention was called for the purpose of appointing delegates to the national convention of the Democratic party to be held at Kansas City on the 4th day of July, 1900. The call for the county convention of the 18th of June contained no mention of any matters other than those pertaining to the selection of delegates, and made no reference to other business. Primaries were held, and the convention of June 18th met. After appointing delegates to the state convention to be held on the 20th of June, the convention declared the office of chairman of the county central committee vacant, and, in form, elected one Ward as

such chairman. There were two factions of the party in
Ravalli county, which for convenience may be designated as
the Clark and the anti - Clark factions. McCullough adhered
to the Clark faction, and Ward to the anti-Clark faction.
McCullough refused to recognize Ward as his successor, and
thenceforward each claimed to be the only true chairman of
the committee. A few days prior to the 31st of August,
Ward called a meeting of the committee for the day last men-
tioned. A quorum of the committee attended, and, after
directing primary meetings to be held therefor, appointed the
17th day of September as the time for holding the convention
to nominate candidates for the legislative assembly and for
county offices, and to elect delegates to the state convention to
be held on September 19th. McCullough called for a meeting
of the committee to be held on the 4th day of Septemper, and
on that day (as may be conceded for the purposes of this case)
a quorum met, and ordered the holding of primaries for a
county convention to be held on the 13th day of September
for the purpose of nominating candidates for the legislative
assembly and county offices, and for the purpose, also, of
selecting delegates to attend the state convention on the 19th
day of September. In pursuance of these two calls, primary
meetings were held by the Clark and anti-Clark factions of the
Democratic party. The larger part of the anti-Clark faction,
including some of the plaintiffs, attended the primaries held
under the call issued by McCullough, and this faction com-
posed the primary meetings held under the call of Ward;
none of the Clark faction participated in the anti-Clark prim-
ary meetings. In obedience to the call issued by McCullough
as chairman of the committee, a county convention met on the
13th day of September, in which 52 delegates were entitled to
seats. Fifty-one delegates were duly elected at the primary
meetings held by virtue of the call issued by Chairman McCul-
lough, and attended the convention. Of this number, 27 were
members of the anti-Clark faction, and 24 were members of
the Clark faction. The Clark delegates sat in a body upon
one side of the hall in which the convention was held, and the

anti-Clark delegates occupied the opposite side.    At the hour appointed for the opening of the convention, McCullough, assuming to act as the chairman of the county central committee, called the convention to order, and the secretary of the committee read the call for the convention.   McCullough then called for nominations for temporary chairman.    One Meyers, the leader of the anti-Clark wing of the convention, placed one Crutchfield in nomination for that office, and a Clark delegate named one Landrum for the office.    Thereupon McCullough directed that the vote be taken by ballot and immediately left the chair and the platform, and went down upon the floor of the hall, for the purpose, as he testifies, of obtaining from a delegate pencils and blank ballots.   In his progress through the hall he was met by the delegate who had placed Crutchfield's name before the convention, who demanded that he call for the credentials and prepare a temporary list of delegates before the ballot was taken, and protested against taking the vote in the manner in which the chairman declared it must be taken.    The chairman declined to entertain the suggestion, and the delegate mentioned then requested that the matter of the temporary chairmanship of the convention be decided by a rising vote.    McCullough thereupon announced from the floor of the convention that the ballot should be proceeded with, and moved on among the delegates.    Meyers, the delegate who had nominated Crutchfield, then addressed the convention, and asked all those who favored Crutchfield for temporary chairman to stand.    This occurred while the chairman, McCullough, was upon the floor of the convention, and while there was no presiding officer upon the platform.    The so-called anti-Clark delegates, being in number 27, arose in response to the request of Meyers.    There was no call made upon those who were opposed to Crutchfied to stand up, the reason given being that a clear majority had voted for him. Meyers then declared Crutchfield elected, and Crutchfield was escorted to the chair.    A temporary secretary was then elected by the 27 delegates who had voted for Crutchfield.    Meanwhile blank ballots had been handed to all the delegates; the

anti-Clark delegates, however, did not cast any ballots. When the vote was canvassed for temporary chairman, it was discovered that Landrum had received 24 votes, as shown by the ballots, and that Crutchfield's name did not appear on any ballot. A temporary secretary was then elected by ballot in the same way that Landrum had been elected to the office of temporary chairman, the number of ballots cast for the temporary secretary being the same as the number deposited for Landrum,—the anti-Clark delegates not voting. The chairman and secretary of the Clark faction occupied one side of the stage and hall, and the chairman and secretary selected by the majority of the convention occupied the other side. Each supposed convention proceeded to transact its own business. Thereafter the 24 Clark delegates refused to act with the majority of the convention presided over by Crutchfield. The convention presided over by the latter nominated a Democratic ticket for the county of Ravalli, including two candidates for representatives in the legislative assembly, and chose delegates to the state convention. This convention remained continuously in session from the time it was organized until its adjournment. While the meeting of which Landrum was chairman, after dispatching preliminary matters, adjourned to meet in the afternoon, when it reconvened and nominated candidates, and selected delegates to the state convention. The Crutchfied convention had meanwhile completed its labors and adjourned *sine die.* Certificates of the nominations of the several candidates were duly filed by the proper officers of each convention. O'Brien, one of the nominees of the Crutchfield convention for the office of representative in the legislative assembly, declined the nomination. On the next day, September 14th, the convention called by Ward met, and nominated a full legislative and county ticket. The candidates nominated by the Ward convention were the same men who had been nominated by the Crutchfield convention, with the exception of O'Brien, in whose place the plaintiff B. F. See was nominated; this convention elected as delegates to the state convention the same men selected by the Crutchfield con-

vention. Certificates of these nominations were also duly filed. The state convention of the Democratic party met on the 19th day of September. The delegates to that convention selected by the Clark faction, presided over by Landrum, appeared, demanding to be seated; and the delegates selected by the Crutchfield and Ward conventions also appeared, and asserted their rights to represent the county of Ravalli in the state convention. After a hearing before the committee on credentials, the state convention determined the contest against the anti-Clark delegates, and seated the Clark delegates, thereby recognizing the 24 delegates presided over by Landrum as constituting the regular Democratic county Convention.

The state convention of the Democratic party nominated candidates for presidential electors, a candidate for representatives in congress, and candidates for all state offices to be filled at the ensuing election. On the 20th day of September the Independent Democratic party of the state of Montana was organized, the delegates selected by the Crutchfield and Ward conventions of Ravalli county participating in the organinzation of the new party. This party on the 2d day of October met in state convention, and named a full state ticket. In the county of Ravalli, also, the Independent Democratic party has held its convention and nominated a complete legislative and county ticket, the candidates so nominated being the same persons who were nominated by the Ward convention, who are also, with the exception of the plaintiff B. F. See, the nominees of the Crutchfield convention. Certificates of all these nominations by the new party have been filed. Many of the anti-Clark faction have abandoned the Democratic party and joined the Independent Democratic party; but, of the plaintiffs, only two (Hatch and McCorkle by name) have left the party first mentioned and united with the latter. These two plaintiffs participated in the county convention of the Independent Democratic party.

With the exception of See, the plaintiffs, together with the other two persons referred to, are the nominees of the Crutchfield convention; the plaintiffs, the two others, and See are the

nominees of the Ward convention. The plaintiffs contend that the Landrum convention was not a convention of the Democratic party, and assert the right to places upon the official ballot under the party name, insisting that either the Ward convention or the Crutchfield convention—the one or the other—was the true convention. Their position is that the Ward convention was the regular one, and that, if the court should hold otherwise, then the Crutchfield convention must be adjudged the true convention of the party. The defendant contends that neither of the conventions last named was a legal convention, but that the meeting presided over by Landrum must be held to be the only true one, and that its nominees are entitled to places in the official ballot under the party name.

There is here presented a contention between rival factions within a political party, each asserting itself to be entitled to the use of the word ''Democratic,'' and to have its candidates placed in the Democratic column upon the official ballot under the nominees of the state convention of that party. Under the statutes of this state, as interpreted in *State ex rel. Scharnikow* v. *Hogan*, 24 Mont. 383, 62 Pac. 583, and *State ex rel. Kennedy et al.* v. *Martin*, 24 Mont. 403, 62 Pac. 588, this day decided, there can be but one nominee of a party for each office to be filled. The necessity therefore arises of determining which of the three sets of nominations is valid.

1. It was the universal practice for the county convention which assembled for the purpose of making nominations to county offices to appoint a new county central committee and elect its chairman. The county committee and chairman so elected remained in office until the next nominating convention appointed their successors. These conventions were held every two years, and were called for the purpose of nominating candidates for public office, and to transact such other business as might properly come before them. That the county central committee had power to select its own chairman to fill a vacancy occurring while a nominating convention was not in session is conceded by the plaintiffs' counsel. He con-

tends, however, that the convention called for the sole purpose of electing delegates to the state convention which was held in Butte on the 20th day of June, 1900, was, by virtue of a usage of the party, clothed with the right to depose McCullough from the chairmanship and supersede him by a chairman of its own selection.    We do not think that such power resided in the convention of June 18th.    The sole purpose for which the convention was assembled was to choose delegates to the state convention at Butte, and this was the only object expressed in the call.    The Democratic electors of the county of Ravalli at the primaries selected certain persons to represent and speak for them in the convention.    These delegates had no greater authority than was conferred upon them by their principals, the Democrats of Ravalli county.    The only express authority they possessed was to send delegates to the state convention; they might also do whatever was incidentally necessary or proper to the full exercise of that authority, for example, they could adopt a platform and instruct the representatives to the state convention. Nor is there evidence tending to show a practice or usage—much less, a custom—for such a convention as that of June 18th to elect a chairman of the county central committee.    It follows that, notwithstanding the action of the convention in declaring the chairmanship vacant, McCullough was the chairman of the county central committee at the time he issued the call for the convention of September 13th, and when the convention met, and as such chairman rightly (the convention not objecting) presided over the convention until a temporary organization was perfected.

The convention of Septemper 13th having been called by the central committee, through its duly elected chairman, was the true convention of the Democratic party in the county of Ravalli.    This determination leads to the next question.

2.    Who were the nominees of the convention of September 13th?  Did the convention nominate the candidates selected by the Landrum faction, or those chosen by the Crutchfield faction?    The nominees of both cannot, as the law is now in this state, be placed on the official ballot under the party name.

The convention consisted of 51 delegates, all of whom are admitted to have been duly elected and entitled to seats. The will of the majority was the will of the convention. The theory underlying popular government is that the majority must rule, and this doctrine applies as well to the action of political parties in making a choice of their candidates for public office as it does to the action of the electors at the polls. We must look through, and, if necessary, disregard mere forms, and ascertain what was the desire of the convention of September 13th, as expressed by the majority of its members. If the nominations were made by a majority of the delegates, they are valid, despite the fact that the manner in which the result was reached may have been without strict adherence to parliamentary rules. Whatever may be the rule applicable to the proceedings of the minority where the majority withdraws from the convention, manifestly a minority of the delegates present could not make legal nominations. In the case at bar a delegate, in the temporary absence of a presiding officer to whom a motion might be addressed, put to the vote of the convention the question of the election of a temporary chairman. It was for the convention itself to decide whether it would select a chairman by ballot, by *viva voce* vote, by standing vote, or otherwise. It chose to select that officer by a rising vote. A clear majority of the delegates voted in favor of Crutchfield, and the minority voted for Landrum. No vital or even serious objection can reasonably be urged against the method adopted for the purpose of obtaining an expression from the convention of its will. Crutchfield, being the choice of the majority, was the choice of the convention and its chairman. The proceedings of the majority presided over by Crutchfield were the acts of the convention. This majority in the presence of the minority made nominations; these nominations were the nominations of the Democratic party of Ravalli county.

3. Argument is advanced that because some of the relators attended the primary meetings' called by Ward, and two of the relators have left the Democratic party and have united

with the Independent Democratic party, which also has nominated them, the nominations made by the Crutchfield convention should not appear upon the official ballot. The right of candidates duly nominated by a political party, whose certificates of nomination have been duly filed, to have their names printed upon the ballot, can be destroyed or waived only by death or resignation, or by conviction of a felony, judicially declared insanity, or removal from the state or county. These, and these only, as was held in *State ex rel. Kennedy et al* v. *Martin*, *supra*, deprive the nominee of the right, theretofore existing, to be placed upon the ballot. Under the statutes of Montana, the same candidate may be nominated for the one office by several political parties, even though their principles be diametrically opposed the one to the other. Such a candidate is entitled to have his name appear in the column of every party which has nominated him.

4. The defendant insists that, in determining the question of whether the nominees of the Crutchfield convention or the nominees of the Landrum convention are entitled to be placed on the official ballot in the Democratic column, the Court is bound by the action of the Democratic state convention, which decided in favor of the regularity of the delegates selected by the minority of the county convention. This point is disposed of by the decision in *State ex rel. Kennedy et al.* v. *Martin, supra.* Within its legitimate field, the Democratic party of the state in convention assembled is paramount and the final judicatory. Its determination of matters within the scope of its powers cannot be questioned or set aside by the courts. Such state convention represents the Democratic party of the state as an entirety, and in a limited sense it speaks for the territorial subdivisions of the party. It is the judge of the election and qualification of its members; it may adopt a general policy, and nominate candidates for office, to be filled by the vote of the electors of the state, and (so long as it keeps within its legitimate sphere) do whatever may be necessary or proper to maintain the integrity and advance the interests of the party. In the present condition of the statutes,

however, its jurisdiction is not unlimited; it certainly cannot do what a majority of the party would not have authority to do if assembled in mass convention; for the state convention has only delegated authority, and must not exceed the power possessed by those who have clothed it with such authority. The members of the party in each county have the right to control their own local affairs. A county convention is without right to interfere with or overturn the regular and duly authorized proceedings of a township primary, mass meeting or convention, and the state convention is likewise without jurisdiction to set aside nominations of a county convention which was held under a call by the regularly constituted authority of the party.

A peremptory writ of mandate will issue. It appearing that the plaintiff See was not nominated by the convention of September 13th, the writ will command the defendant to cause to be printed upon the official ballot to be prepared by him for use at the election of November 6, 1900, in the column headed "Democratic," and under the names of the nominees of the Democratic party for the several state offices, the names of the plaintiffs, except that of See, and of the two other nominees of the convention of September 13th as prayed. The right, if any, which See may have acquired since the institution of this proceeding to have his name upon the ballot in the Democratic column, is not adjudged, and this decision is without prejudice to such right.

Let judgment be entered accordingly, with costs.

*Writ Granted.*

MR. JUSTICE WORD being a candidate upon the Independent Democratic ticket, did not sit at the hearing of this cause, and takes no part in its decision.