STATE EX REL. GILCHRIST, RELATOR, *v.* WESTON,
DEFENDANT.

(No. 1,876.)

(Submitted October 28, 1902.    Decided October 29, 1902.)

*Elections—County Central Committees — Contests—Decision by State Convention — Effect — Voting — Ballots — Party Name—Mandamus—Jurisdiction.*

1.    Where, by reason of dissensions in the central committee of the democratic party of a county, the committee divided, and each faction elected delegates to attend the state convention, and the contest so occasioned was presented to the state convention on the application of the delegates of both factions for seats, and the state convention decided such contest before any candidates for county offices were nominated, the decision so made was conclusive, and the candidates subsequently nominated by the successful faction were entitled to have their names printed on the official ballot under the party name.

2.    Where a contest between the delegates of two factions in a state convention was submitted for decision, and the vote on the issue disclosed a clear majority of all the delegates present in favor of one of the contesting delegations, without the votes of such contesting delegates, the fact that such delegates voted on the question was immaterial.

3.    Where the county clerk and recorder erroneously refused to place the names of all the candidates on the official ballot who had been nominated by one faction of a political party, on the ground that the opposing faction was legally entitled to the use of the party name, the court, in *mandamus* to compel the clerk to print the name of one of the candidates so excluded on the ballot, had jurisdiction to decide the entire controversy, and require the printing of the names of all the candidates so erroneously excluded.

APPLICATION by the state, on relation of M. P. Gilchrist, for *mandamus* against John Weston, as county clerk and recorder of Silver Bow county, Montana, to compel respondent to place relator's name on the ballot to be voted at the November, 1902, election, as a Democratic candidate for election as district judge. Granted.

STATEMENT OF THE CASE.

Application for writ of *mandamus*.    The facts out of which this controversy arose, so far as a statement of them is necessary to present the questions involved, are the following:    On Sep-

temer 6, 1902, one George H. Casey, the chairman of the central committee of the democratic party of Silver Bow county, gave notice that a meeting of the committee would be held on September 11th, at 8 o'clock in the evening, at one of the court rooms of the district court in the city of Butte, the particular room being designated in the notice. The purpose of the meeting, as disclosed by the notice, was to designate a date and to select a place for holding a county convention of the democratic party to nominate candidates for all offices to be filled by the electors of the county at the general election to be held on November 4th, including a candidate for district judge and members of the legislative assembly, and to select delegates to the state convention to be held at Bozeman on September 23d; to apportion delegates to the various precincts in the county; to fix the date and to name the places for primaries for the choice of delegates to the county convention; and to transact such other business as might properly come before the committee. As early as the date of the notice there had developed a difference of opinion between the chairman and some of the members of the committee as to whether the power to fill vacancies in the membership of the committee was lodged in the chairman or in the committee, the chairman asserting that the convention which had selected him in 1900 had, by resolution expressly so providing, clothed him with such power. There was also a division of opinion among the members of the committee, as well as among the electors, as to party policies in the county. This division of opinion had resulted in a factional fight for the control of the committee by the opposing factions, and, through this means, for the control of local party affairs. Under the rule established by party usage, the committee should have been composed of 52 members, one for each voting precinct in the county at the close of the campaign of 1900; but for some reason, not stated, seven out of the 52 precincts were not represented, no appointments having been made for them. It was claimed by the chairman that there were also other vacancies occasioned by death or removal of certain members of the committee from the state or county. Before the committee assembled, the chair-

man appointed persons from the different precincts to fill all
vacancies existing at the date of the call, and added one mem-
ber for a precinct lately created by the board of county com-
missioners.   In all, the chairman made 16 appointments,—
eight for the precincts for which no appointments had thereto-
fore been made, and eight for vacancies which he claimed had
occurred by death or change of residence.   When the chairman
went to the place of the meeting at the appointed hour, he found
present, either in person or by proxy, 41 of the old members,
and the 16 members lately appointed by himself.   The court
room was filled with a crowd composed partly of persons at-
tracted by curiosity, but mainly of the adherents of the rival
factions.   Confusion prevailed, and the chairman, after attempt-
ing to call the committee to order, announced that no business
would be transacted until the hall should be cleared.   The
crowd refused to retire from the hall, and after much delay,
during which the chairman refused to proceed with the business
in hand because of the disorder, a portion of the committee,
under the leadership of one P. J. Gilligan, the secretary of the
committee, adopted a resolution deposing the chairman from
office, and proceeded to elect another in his stead.   The person
selected for chairman in this way was one James H. Lynch.
Thereupon Chairman Casey entertained and declared carried
a motion for adjournment.   This motion included a provision
that the committee should meet again at the call of the chair-
man.   The chairman then announced that the committee would
assemble in ten minutes at the Auditorium,—another hall, a
few blocks away.   Thereupon he, in company with 33 persons
who claimed to be members of the committee, or to hold proxies,
left the hall and went to the Auditorium.   Of these 33 persons,
17 were old members of the committee, and the remaining 16
were persons appointed by the chairman to fill vacancies, or
their proxies.   Secretary P. J. Gilligan remained at the court
room with 25 persons, all of whom had been old members of
the committee, or were holding proxies.   Five of them, it was
claimed by Chairman Casey, had no right to take part in the
proceedings, either in person or by proxy, for the reason that

they had removed permanently from the state or county. On reaching the Auditorium, Chairman Casey called the meeting to order, and thereupon, claiming to act as the regular committee, it proceeded, after selecting a secretary, to the dispatch of the business outlined in the call. The date of the county convention was fixed for September 19th, and a call was regularly issued for primaries to be held on the 17th to elect delegates to attend it. The place named for the meeting of the convention was the Auditorium. Primaries were held and the convention assembled pursuant to call, but, after perfecting the organization and selecting delegates to attend the state convention, it adjourned to meet again at the same place on September 29th to nominate a ticket. On the date then fixed the convention reassembled, nominated candidates for all offices to be filled by the electors of the county, and its chairman and secretary filed a certificate of nomination with the defendant, the clerk of the county, as required by law. The committeemen who remained at the court room claimed to be in the majority, and therefore authorized to act for the party. Under the leadership of Lynch, they proceeded to accomplish the business for which the committee had been called together by Chairman Casey. The date of the county convention was fixed for September 18th. A call was regularly issued and published for primaries to be held on September 12th to elect delegates to attend it. Primaries were held under the call, and the convention assembled on September 18th. After completing its organization, it selected delegates to the state convention, and thereupon adjourned over until October 9th. At that time it reassembled and completed the business for which it was called, by nominating candidates for the offices to be filled by the electors of the county, and caused certificates of nomination to be filed with the defendant, as required by the statute. These conventions will hereafter be referred to, respectively, as the Casey and Lynch conventions. In the meantime both delegations attended the state convention at Bozeman on September 23d, and each claimed recognition by that body as the regularly accredited delegation of the democratic party of Silver Bow county.

Under the party usages, these claims were submitted to the state central committee, which was then in session in Bozeman, for the purpose of determining the rights of the contesting delegations to participate in the preliminary organization of the convention. This committee, after considering the controversy, decided that the Casey convention was regular, and declared the delegates selected by it entitled to be seated. The whole controversy was then by the convention referred to a committee on credentials, which again held in favor of seating the Casey delegates, and so reported to the convention. The report was thereupon adopted, and accordingly the Casey delegation was formally recognized as regular, and took part in all subsequent proceedings. The state convention was composed of 512 delegates. When the vote was taken upon the report of the committee on credentials, only one vote was recorded in the negative. The Casey delegation, however, voted upon the adoption of the report. When the time arrived for the publication of the tickets as provided by law, the defendant, whose duty it was to publish them, refused to publish the county ticket named by the Casey convention, and signified his intention not to cause the same to be printed upon the ballot in the column designated "Democratic," or at all, but to cause to be printed instead thereof the ticket nominated by the Lynch convention. Thereupon the relator, being the nominee for state senator upon the ticket named by the Casey convention, filed his verified petition in this court, setting forth the foregoing facts, and asked for a writ directing the defendant to cause to be printed upon the ballot the names of himself and other candidates nominated by that convention, and otherwise to prepare the ballot as the law requires. The petition was filed and the alternative writ issued on October 21st. Owing to the shortness of time before the date of the election, the writ was made returnable on October 23d. The defendant appeared on that date and filed his answer, putting in issue all the material allegations set forth in the petition. The application was thereupon submitted upon the evidence of the parties in support of their respective contentions. After consideration of the evidence and

the contentions of the parties, the court adjudged that the writ should issue, directing the defendant to cause to be printed upon the ballot, in the column headed "Democratic," the ticket nominated by the Casey convention, and to omit therefrom entirely the ticket nominated by the Lynch convention. The judgment was entered on October 29th, the court stating that its reasons for the conclusion reached would be announced at a subsequent time.

*Mr. W. M. Bickford, Mr. C. F. Kelly,* and *Mr. R. Lee Word,* for Relator.

*Mr. J. J. McHatton, Mr. L. P. Forrestell,* and *Mr. Guy Stapleton,* for Defendant.

MR. CHIEF JUSTICE BRANTLY, after stating the case, delivered the opinion of the court.

At the hearing, counsel for the relator argued that, inasmuch as the controversy between the contending factions in the committee and the party in Silver Bow county had been submitted to and determined by the state convention in favor of the Casey convention, this determination must be regarded as conclusive upon the right of the nominees on the Casey ticket to have their names appear upon the ballot under the party designation. The contention was also made that, though the judgment of the state convention should be treated as of no import whatever, nevertheless the decided preponderance of the evidence was in favor of the conclusion that Chairman Casey was empowered to fill vacancies upon the committee; that his appointments were properly made, both for the purpose of increasing the number of members to one for each precinct in the county, and also for the purpose of filling places rendered vacant by death or change of residence; that the committee was unable to transact any business because of the confusion brought about by the presence of the crowd; that he and those associated with him were justified in leaving the hall to seek a place where they could dispatch the business properly before the committee; and

therefore that the portion of the committee led by him was the only committee authorized to act for the party.

On the other hand, counsel for the defendant contended that the judgment and determination of the state convention was of no significance whatever; that the evidence showed clearly that the chairman had no authority to fill any vacancies upon the committee, but that such authority was vested in the committee itself; that, even if the chairman had such authority, he had no power to decide whether a vacancy existed by reason of a change of residence of any committeeman, or other cause; and that by reason of the fact that he and his adherents left the court room, which had been appointed as the place of meeting, they lost all right to act for the party in any capacity whatever. Accordingly, all evidence touching the final determination reached by the state convention, though not controverted, was objected to by the defendant as incompetent and irrelevant. The evidence was admitted subject to the objection, the court not being willing to decide the question thus presented by the objection without further consideration. There was thus brought to our attention for decision the question: What force should be given to a determination by the highest judicatory in the party of the right of contending local factions to nominate the local ticket, and thus to give the candidates named by it the right to use the party designation?

It will be noted that, at the time the controversy arose and the decision was made by the state convention, no candidates had been nominated by either of the factions. That convention, therefore, did not undertake to determine, directly or indirectly, the right of any candidate to have his name appear on the ballot as a nominee of the party. Had one or both of the rival county conventions nominated candidates for the local offices before the meeting of the state convention, a different question would have been presented, and this court would perhaps have been required, under its former decisions, to hold tenable the position taken by the defendant,—that the action of the state convention was without significance.

It was held in *State ex rel. Scharnikow* v. *Hogan,* 24 Mont.

383, 62 Pac. 583, that no action had by a state convention can render valid a nomination for the office of district judge, where the convention assuming to make it does not properly represent the electors of the district. That case turned upon the question of fact whether the delegates who sat in the district convention had been regularly chosen by the electors of the district to make the nomination. It being made to appear that such was not the case, this fact was held determinative of the right of the candidate to have his name appear upon the ballot, although the state convention had assumed to declare that the delegates were the regularly accredited delegates from the counties composing the district. The decision rests upon the theory of our state government that the people in the political subdivisions of the state have the right to nominate candidates for local offices through representative conventions composed of electors of their own choosing, or in mass meetings, held after due notice, as well as to elect officers from among candidates so nominated; and no action on the part of the state convention may dispense with a substantial observance of this fundamental principle.

Again, in the case of *State ex rel. Kennedy et al.* v. *Martin,* 24 Mont. 403, 62 Pac. 588, which grew out of the same factional fight in Deer Lodge county that gave rise to the case just cited, it was held that where a ticket had been nominated by a representative county convention, regularly called for that purpose by the local party authorities, prior to the meeting of the state convention, the state convention, though the delegates chosen by the county convention refused to sit in the state convention, but joined in an independent movement, in which some of the local candidates also joined, had no power to authorize loyal members of the party residing in the county to take charge of party affairs therein, and to nominate a ticket to be printed upon the official ballot under the party designation, to the exclusion of the ticket already nominated. This decision rests upon the principle that when the candidates of a party have been once regularly nominated by a representative convention of the party, and their certificates of nomination filed with the proper officer, the right of such candidates to have

their names appear upon the official ballot becomes fixed by law, and is not subject to control by a state convention. This conclusion was based upon the fact that there is no provision of law by which the place of any candidate upon the ticket may become vacant, except by death, resignation, conviction of a felony, judicially declared insanity, or removal from the county or state. When nominations have been so made, the presumption arises that the convention was authorized to make use of the party designation, either by virtue of the power conferred by the state convention by its recognition during the preceding campaign of the regularity of the local administrative agencies which called it together, or by established party usages. The same conclusion was reached in *State ex rel. Hatch* v. *Smart,* 24 Mont. 413, 62 Pac. 591. In each of these cases this court felt impelled, in view of the provisions of the election laws and the constitution, to investigate the facts, and to determine therefrom whether the candidates whose rights were in issue had been nominated by representative conventions called by authority and conducted in accordance with party usages.

We agree with counsel for the defendant in their opinion that these cases were correctly decided, both upon reason and principle, and that political conventions should not be permitted to assume the exercise of judicial functions to the exclusion of the courts in matters involving rights conferred by law. But we do not concur with them in the view that they apply to the conditions presented in the case at bar. In this case the state convention was appealed to for recognition by the contending factions, and for the right to use the party designation. This was before either had assumed to act for the party in selecting candidates under the provisions of the statute. Each was claiming the right to control the local administration of party affairs. These claims were submitted to the ultimate party judicatory, which decided the controversy after an examination of disputed questions of fact, and presumably in accordance with party usages. The principle underlying the cases cited does not therefore apply. Furthermore, in each of those cases the necessity for party organization and discipline

as a means to secure party existence was expressly recognized, as was also the proposition that in mere matters of party control, wherein no effort is made to declare and enforce legal rights, the determination of the party judicatory is binding upon all the members of the party, and upon the courts as well.

It was said in *State ex rel. Kennedy* v. *Martin, supra,* that the declarations of the state convention are effectual to change the administrative agencies of the party in a particular county. This power also implies exclusive authority to recognize as regular one of two contending factions in any local subdivision of the state, and to give the one authority to control all the party affairs within its jurisdiction to the exclusion of the other, so long as the exercise of it does not interfere with legal rights.

Again, in *State ex rel. Hatch* v. *Smart, supra,* it was said: "Within its legitimate field, the democratic party of the state, in convention assembled, is paramount, and the final judicatory. Its determination of matters within the scope of its powers cannot be questioned or set aside by the courts. Such state convention represents the democratic party of the state as an entirety, and in a limited sense it speaks for the territorial subdivisions of the party. It is the judge of the election and qualification of its members; it may adopt a general policy, and nominate candidates for office, to be filled by the vote of the electors of the state, and (so long as it keeps within its legitimate sphere) do whatever may be necessary or proper to maintain the integrity and advance the interests of the party." The designation belongs to the party, and the party, as a political body, has the exclusive right to control the use of it, not only in the state, but in the local subdivisions thereof, until, by the exercise of power on the part of the local organization, rights of private individuals are involved. It is then only that courts will undertake to interfere. It would be intolerable if, upon the occasion of every factional dispute in a county or district in the state, the courts could be called upon to determine which faction is entitled to the use of the party designation. The well-being and safety of the party organization require that it should hold and exercise this power: For illustration, if in

the present case this court should hold that the Lynch convention was regular, notwithstanding the determination made by the state convention, the result would be that the ticket nominated by the Lynch convention, though declared by the regularly constituted party authorities not to be the regular democratic ticket, would be placed upon the ballot under the party designation, and so from time to time, as the period for electing local officers would recur, this anomalous situation would be presented, to the utter demoralization and destruction of all party discipline. The party would be left utterly without power to preserve its own organization and integrity, and one of the most effective means for the preservation of our institutions would be wholly destroyed. The power to decide these disputes must rest somewhere, but it is far safer and much more in accord with our free institutions that it should remain with the judicatories of our political parties, where it of right belongs.

This view we deemed conclusive of the case. We therefore did not go into an examination of the evidence to determine what authority Chairman Casey had to make appointments to fill vacancies in the membership of the committee, nor whether the claim of his faction that the committee was prevented by the confusion in the court room from proceeding to transact there the business for which the committee was called together was well founded.

Reference was made during the argument to the fact that the Casey delegation voted upon the question of the title to seats in the convention. It was said that this fact vitiated the judgment of the convention. It is a sufficient answer to this suggestion to say that the evidence disclosed that a clear majority of all the delegates present voted in the affirmative, without including the contesting delegation. We did not undertake to determine what the result would have been had the vote of that delegation been necessary to create a majority.

Counsel for relator, in making this application, proceeded upon the assumption that this court would not by *mandamus* grant the whole relief to which relator was entitled, and under

this writ direct the defendant to omit from the ballot altogether the ticket named by the Lynch convention. They therefore instituted another proceeding for injunction to accomplish this end. (*Post,* 197, 70 Pac. 1134.) Upon consideration, however, the court concluded that the preparation of the ballot involved but a single duty, and that, as the proper performance of this duty under the statute, as construed by the decisions of this court, required him to omit the Lynch ticket from the ballot (*State ex rel. Kennedy* v. *Martin* and *State ex rel. Hatch* v. *Smart, supra*), the whole matter could be adjusted under the writ in this proceeding. This we deemed in conformity with the suggestion contained in *Attorney General* v. *Chicago & N. W. Ry. Co.,* 35 Wis. 425, and approved in *State ex rel. Clarke* v. *Moran,* 24 Mont. 433, 63 Pac. 390, that, "where defect and excess meet in a single case, the court might meet both, in its discretion, by one of the writs, without being driven to send out both tied together with red tape for a single purpose." Accordingly the following order was made and entered:

It is therefore considered and adjudged that a peremptory writ of mandate issue to the defendant, as clerk of Silver Bow county, directing him forthwith to print upon the official ballot to be used at the election to be held on November 4, 1902, the ticket containing the names of the relator and his associates, and known in this proceeding as the ticket nominated by the Casey convention, in the column entitled "Democratic," and that he do not print thereon the ticket nominated by the convention called by the so-called Lynch committee, and known in this proceeding as the Lynch convention. It is further ordered that the defendant pay all the costs of this proceeding. Let judgment be entered and the writ issue forthwith.

*Writ granted.*

On Application for Writ of Injunction.

(No. 1,875.)

(Submitted October 28, 1902. Decided October 29, 1902.)

27 197
30 369

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Application for a writ of injunction to restrain the defendant, as clerk of Silver Bow county, from causing to be printed upon the official ballot under the designation "Democratic" a certain ticket which, it was alleged, was not the regular party ticket. An order to show cause was issued and made returnable on October 23. A demurrer and a motion to strike out portions of the petition being overruled *pro forma,* the defendant filed his answer controverting such allegations of the petition as he deemed material. A decision of the questions raised by the demurrer and motion was reserved. Thereupon the cause was heard and submitted with the application for *mandamus* (*ante* p. 185), upon the evidence adduced at the hearing thereon. The conclusion reached in that cause having rendered it unnecessary to examine and decide any of the questions presented herein, this cause was dismissed at the cost of the relator.

*Dismissed.*